{¶ 38} While I concur in the judgment, I write initially to clarify the summary judgment standards set forth by the majority. The majority correctly notes that in Dresher v. Burt (1996), 75 Ohio St.3d 280, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion by identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. What is absent from the majority opinion is the *Page 12 
balance of the Dresher modifications to prior summary judgment standards which are critical to a complete analysis in this case and in future cases.
 {¶ 39} Summary Judgment Standards Post-Dresher
 {¶ 40} The court in Dresher made it clear that the evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. (Emphasis added.) If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial, failing which summary judgment, if appropriate, shall be entered against the nonmoving party based on the principles firmly established in Ohio for some time in Mitseff v. Wheeler (1988), 38 Ohio St. 3d 112.
 {¶ 41} The court in Dresher also stated that paragraph three of the syllabus in Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108 is too broad and fails to account for the burden Civ.R. 56 places upon a moving party. Id. at 295. (Emphasis added.) The court, therefore, limited paragraph three of the syllabus in Wing to bring it into conformity with Mitseff, supra. Id.
 {¶ 42} The Dresher court went on to hold that when neither the movant nor the non-movant provides evidentiary materials demonstrating that there are no material facts in dispute, the movant is not entitled to a judgment as a matter of law as the *Page 13 
moving party bears the initial responsibility of informing the trial court of the basis for the motion "and identifying those portions of therecord which demonstrate the absence of a genuine issue of fact on amaterial element of the nonmoving party's claim." Id. at 296. (Emphasis added.)
 {¶ 43} In Mitseff, the court held that a party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond. Accordingly, the court made it clear that the party moving for summary judgment bears the burden of affirmatively demonstrating with respect to every essential issue in each count of the complaint that there is no genuine issue of fact even with regard to the issues on which the plaintiffs would have the burden of proof should the case go to trial.
 {¶ 44} The Threshold Question in "Slip-and-Fall on Ice and Snow"Cases
 {¶ 45} Secondly, I must disagree with basic premises underlying the majority's opinion. The majority opinion, as well as many other opinions addressing summary judgment motions in slip-and-fall on ice and snow cases, focuses on the knowledge of the plaintiff of the hazardous condition, which necessarily raises the issues of assumption of the risk and contributory negligence. It appears that because Mr. Bacon was aware of the icy condition of the parking lot before he fell, the majority concludes that recovery is precluded as a matter of law.
 {¶ 46} This focus is misplaced because questions of contributory negligence and assumption of the risk generally preclude summary judgment as they are questions for the trier of fact. See, e.g.,Collier v. Northland Swim Club (1987), 35 Ohio App.3d 35, 39. So, too, is reliance on the open and obvious doctrine. *Page 14 
 {¶ 47} The tortured reasoning used to reach an end result employed in many of the decisions cited by the majority has created a confusing body of law. Businesses and property owners and their attorneys are still left with no definitive answer to the questions, "Should I plow?", "Should I salt?", "Should I warn?", and "Should I inspect, and if so, how often?" Injured parties and their attorneys are also left with no definitive answer as to the likelihood of recovery.
 {¶ 48} In this case Mr. Bacon failed to provide evidence that the icy condition of the parking lot was caused by either an unnatural accumulation or an improper accumulation of ice or snow. Thus, I concur with the judgment in this case because no material question of fact remained for jury determination, but I believe that a better approach to these cases is needed to give some guidance to the bench, bar and the public.
 {¶ 49} A well-reasoned and straight forward analysis that should guide decisions in slip-and-fall on ice and snow cases may be found in Judge Brogan's decision in Community Ins. Co. v. McDonald's Restaurants ofOhio, Inc. (Dec. 11, 1998), 2d Dist. Nos. 17051 and 17053, 1998 Ohio App. LEXIS 5878. The opinion provides a thorough review of all of the major decisions often cited by both sides and poses a simple and logical "threshold question," i.e., whether the accumulation of ice is "natural." "If it is natural, no duty exists to remove the accumulation or to render it less dangerous. Conversely, a duty may arise if the accumulation was `unnatural' or `improper,' meaning that other circumstances exist that create a hazard `substantially more dangerous to a business invitee than that normally associated with snow.'" Id. at 12-13, citing Mikula v. Tailors (1970), 24 Ohio St. 2d 48, paragraphs five and six of the syllabus. Succinctly *Page 15 
put by Judge Brogan, "The law only assigns liability to one who, by acting, has actually made a given danger worse." Id. at 15.
 {¶ 50} Unnatural accumulation is caused by some "human intervention or of some condition that caused the ice to accumulate improperly." Id. at 18 (Emphasis added). Thus salting, shoveling, or plowing does not in and of itself transform a natural accumulation to an unnatural one without some negligence on the part of the owner or his or her agents. As the Sixth District Court of Appeals held, "[a]n accumulation of ice and snow is not rendered `unnatural' by the landlord's removal of the top layer of snow by plowing, exposing the accumulated ice and snow underneath."Coletta v. Univ. of Akron (1988), 49 Ohio App. 3d 35, syllabus. Subsequent accumulations after the initial plowing are not unnatural nor is, as is cogent to Mr. Bacon's case, melted run-off from snow piled onto a sloped area which runs down and re-freezes, as this must be anticipated by all who live in a snow-belt area, as noted by the Eighth District Court of Appeals in Hoenigman v. McDonald's Corp. (Jan. 11, 1990), 8th Dist. No. 56010, 1990 Ohio App. LEXIS 131, 10.
 {¶ 51} When the plaintiff submits evidence of an intervening act of negligence that perpetuated the anticipated hazard and made it substantially more dangerous than that normally anticipated with a natural accumulation of ice or snow, i.e., evidence by way of affidavit or deposition testimony of negligent snow-plowing, a question of fact then arises as to whether the ice hazard was unnatural.
 {¶ 52} As this court had no such evidence before it, summary judgment was properly rendered in defendants' favor. *Page 1