OPINION *Page 2 
{¶ 1} Plaintiff-Appellants, Marie and Christopher Burckholter, appeal the judgment of the Mercer County Court of Common Pleas granting summary judgment in favor of Defendant-Appellees, Dentistry for You, Forsthoefel Young, Inc., and Harold Miracle. On appeal, the Burckholters contend that the trial court erred in granting summary judgment because genuine issues of material fact existed as to whether Defendant-Appellees had superior knowledge of a hazardous condition on their parking lot and created an unnatural accumulation of snow and ice. Based upon the following, we affirm the judgment of the trial court.
 {¶ 2} On December 12, 2005, Marie arrived for an appointment at Dentistry for You, Forsthoefel Young, Inc. ("Dentistry for You") and parked her Dodge Durango in the parking lot. When exiting her vehicle, Marie slipped and fell, injuring her tailbone.
 {¶ 3} In May 2007, Marie and her husband, Christopher, filed a complaint against Dentistry for You and Harold Miracle (jointly referred to as "Appellees"), the individual with whom Dentistry for You contracted to remove snow from the parking lot. The Burckholters' complaint alleged that Appellees negligently maintained the parking lot; that Appellees created a hazardous and dangerous condition in the parking lot; that Appellees' negligence caused Marie permanent and partially disabling injuries, incurrence of medical expenses, loss of income, *Page 3 
and physical pain, shock, and nervousness; that Appellees' negligence caused Christopher to incur medical expenses for Marie's treatment; and, that Appellees' negligence caused Christopher to lose consortium with Marie.
 {¶ 4} In June 2007, Dentistry for You answered, denying the Burckholters' allegations and asserting, among other defenses, that Marie voluntarily assumed the risk of an open and obvious hazard and that Marie's negligence was the sole and proximate cause of the Burckholters' injuries.
 {¶ 5} In May 2008, Marie was deposed and testified that, the morning of December 12, 2005, she drove to Dentistry for You for an appointment; that she recalled seeing snow on the ground that morning; that, when she pulled into the parking lot at Dentistry for You, she observed snow piled up in certain areas of the parking lot; that she also observed that the parking lot appeared to be "cleared" or plowed; that she parked her Dodge Durango in a parking space in front of the building; that, as she pulled in, she observed that the parking space bordering her space was close to an "island" of piled snow; that she opened her door, but did not recall looking at the ground or holding onto the door before stepping out; that she put her left foot on the ground, and, as she stood and put her right foot down, she slipped; that she fell straight down onto her tailbone; that she immediately experienced pain in her back; that she did not recall seeing any ice, but felt *Page 4 
wetness and ice on the ground with her hand; and, that she was transported to a hospital by ambulance.
 {¶ 6} Marie further testified that she was aware that, when snow is piled up and the weather warms, the snow melts; that she was aware that it was common for snow to melt during the day and then refreeze at night; and, that she lived in northwest Ohio her entire life and was familiar with the concepts of melting and refreezing as a consequence of winter weather.
 {¶ 7} Thereafter, Dr. David Forsthoefel was deposed and testified that he owns Dentistry for You; that, in December 2005, he employed Miracle to remove snow from the parking lot; that Miracle plowed only the parking lot, and he shoveled and salted the sidewalks and handicapped ramp himself; that he never salted the parking lot surface; that he knew that snow can melt during the day and freeze at night when the temperature drops; and, that, after Marie fell, he could see the ice on which she was lying.
 {¶ 8} Additionally, Harold Miracle was deposed and testified that he had been plowing snow since 1965; that he had plowed the parking lot at Dentistry for You for five or six years; that he removed snow from the parking lot on December 11, 2005; that the parking lot was surrounded by curbs, which limited the areas to which he could push the snow; that "you have to keep your snow on your property. Nobody else wants it" (Miracle Dep., p. 10); that he pushed the snow *Page 5 
into five piles located in all four corners of the lot and an island abutting a parking area directly in front of the building; that he chose these areas because they were "the point of least resistance" (Miracle Dep., p. 17); and, that he was not responsible for salting the sidewalks or parking lot.
 {¶ 9} In July 2008, Dentistry for You moved for summary judgment, arguing that, according to case law, no liability existed for a slip and fall accident on a natural accumulation of snow and ice; that the snow and ice on which Marie slipped was a natural accumulation; and, that Appellees owed no duty to the Burckholters. Additionally, Miracle moved for summary judgment on substantially the same grounds.
 {¶ 10} In September 2008, the Burckholters filed a brief in opposition to Appellees' motions for summary judgment, asserting that genuine issues of material fact existed as to whether Appellees owed a duty to them and whether the Appellees possessed superior knowledge of an unnatural accumulation of snow and ice in the parking lot.
 {¶ 11} In November 2008, the trial court granted Appellees' motions for summary judgment, finding that there was no evidence that they had created a hazardous and dangerous condition; that the evidence established that any ice on which Marie may have slipped was the result of a natural accumulation due to the winter weather, of which she was aware; that, as any ice or snow accumulation *Page 6 
was natural, Dentistry for You owed no duty to the Burckholters; and, that the evidence established that the natural ice accumulation was an open and obvious hazard.
 {¶ 12} It is from this judgment that the Burckholters appeal, presenting the following assignment of error for our review.
 THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN GRANTING DEFENDANTS'-APPELLEES' MOTION FOR SUMMARY JUDGMENT BECAUSE THERE EXISTS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER DEFENDANTS-APPELLEES OWED A DUTY TO PLAINTIFF-APPELLANT, HAD SUPERIOR KNOWLEDGE OF A HAZARDOUS CONDITION, AND WHETHER THEIR CONDUCT CREATED AN UNNATURAL ACCUMULATION OF SNOW AND ICE.
 {¶ 13} In their sole assignment of error, the Burckholters argue that the trial court erred in granting Appellees' motions for summary judgment because there were genuine issues of material fact as to whether Appellees owed a duty to the Burckholters, possessed superior knowledge of hazardous ice accumulations, and created an unnatural accumulation of ice. Specifically, the Burckholters contend that the snow piles created when Miracle plowed the parking lot created a run-off of water that refroze in the parking space in which Marie fell; that it was undisputed that ice was present in the parking space less than twenty-four hours after the parking lot was plowed; and, that the accumulation of ice running from *Page 7 
the snow piles to the parking space was a direct result of Appellees' snow removal process and, therefore, was unnatural.
 Standard of Review {¶ 14} An appellate court reviews a summary judgment order de novo.Hillyer v. State Farm Mut. Auto. Ins. Co. (1999), 131 Ohio App.3d 172,175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distr. Co., 148 Ohio App.3d 596,2002-Ohio-3932, ¶ 25, citing State ex rel. Cassels v. Dayton City SchoolDist. Bd. of Ed., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ. R. 56(C);Horton v. Harwick Chemical Corp., 73 Ohio St.3d 679, 686-687,1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356,358-59, 1992-Ohio-95.
 {¶ 15} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of *Page 8 
material fact. Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support its argument. Id. at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; she may not rest on the mere allegations or denials of her pleadings. Id.; Civ. R. 56(E).
 Liability for Snow and Ice Accumulation {¶ 16} Generally, an owner or occupier of land owes no duty to business invitees to remove natural accumulations of ice and snow from sidewalks on the premises, or to warn invitees of the dangers associated with natural accumulations of ice and snow. Norton v. Marion Gen.Hosp., 3d Dist. No. 9-06-04, 2006-Ohio-3535, ¶ 10, citing Brinkman v.Ross (1993), 68 Ohio St.3d 82, 83. The rationale underlying this general rule is that everyone is presumed to appreciate the risks associated with natural accumulations of ice and snow, and, therefore, everyone is charged with the responsibility to protect themselves against those risks. Id., citing Brinkman, 68 Ohio St.3d at 84. As the Supreme Court of Ohio has stated, it is a "simple fact that snow and ice are part of wintertime life in Ohio." Lopatkovich v. Tiffin (1986),28 Ohio St.3d 204, 206.
 {¶ 17} One exception to the general no duty rule is where the land owner or occupier is shown to have actual or implied notice "that the natural accumulation *Page 9 
of snow and ice on his premises has created there a condition substantially more dangerous to his business invitees than they should have anticipated by reason of their knowledge of conditions prevailing generally in the area[.]" Debie v. Cochran Pharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38, at paragraph one of the syllabus. In order to be liable, the land owner or occupier must have some superior knowledge of the existing danger. LaCourse v. Fleitz (1986), 28 Ohio St.3d 209,210.
 {¶ 18} Another exception to the general no duty rule exists where the owner or occupier of land negligently causes or permits an unnatural accumulation of ice or snow. Norton, 2006-Ohio-3535, at ¶ 10, citingLopatkovich, 28 Ohio St.3d at 207. An accumulation of ice and snow is unnatural if it has been created by causes and factors other than meteorological forces of nature such as low temperature, strong winds, and drifting snow. Id., citing Porter v. Miller (1983),13 Ohio App.3d 93, 95. In other words, an unnatural accumulation is one that is "man-made" or "man-caused." Porter, 13 Ohio App.3d at 95.
 {¶ 19} Concerning removal of natural accumulations of ice and snow, "Ohio law clearly provides that the plowing of a parking lot to remove a natural accumulation of snow and ice does not automatically change the nature of that accumulation from natural to unnatural." Bosh v.Mathews-Kennedy Ford Lincoln Mercury, Inc., 3d Dist. No. 9-90-80,1991 WL 216898, citing Coletta v. Univ. of *Page 10 Akron (1988), 49 Ohio App.3d 35, 36-37. Additionally, numerous courts have concluded that run-off from melting piles of plowed snow that creates icy patches upon refreezing typically does not constitute an unnatural accumulation of ice. See Davis v. The Timbers Owners'Assoc, 1st Dist. No. C-990409, 2000 WL 43709; McDonald v. Kroger, 2d Dist. No. 2002 CA 38, 2002-Ohio-6195; Zamano v. Hammerschmidt, 6th Dist. No. H-02-031, 2003-Ohio-1618; DeSalvo v. DeBartolo Corp., 7th Dist. No. 96 CA 229, 1998 WL 896327; Flint v. Cleveland Clinic Found., 8th Dist. Nos. 80177 80478, 2002-Ohio-2747; Hoenigman v. McDonald's Corp., 8th Dist. No. 56010, 1990 WL 1334; Klein v. Ryan's Family Steak House, 9th Dist. No. 20683, 2002-Ohio-2323. As the Second Appellate District has stated, "[w]hen snow is removed, it has to be placed somewhere, and `a certain natural run-off of water is to be expected.'" McDonald, 2002-Ohio-6195, ¶ 9, citing Hoeningman, supra.
 Assignment of Error {¶ 20} In the case at bar, the Burckholters advance two theories in support of their argument that summary judgment was improper: (1) that Appellees possessed superior knowledge of a hazardous ice accumulation in the parking lot, and (2) that Appellees negligently caused or permitted an unnatural accumulation of ice in the parking lot. *Page 11 
 {¶ 21} The Burckholters first argue that Appellees possessed superior knowledge of hazardous ice accumulations in the parking lot. In support, the Burckholters argue that Dr. Forsthoefel admitted that he knew that snow and ice thaws, runs, and refreezes based upon inclement weather; that both Appellees participated in the snow removal process; and, that Miracle chose the locations to move the snow into piles, including the island abutting the space adjacent to where Marie parked and fell. However, Marie also testified that she was aware that snow commonly melts during the day and refreezes overnight; that she observed piles of snow in the parking lot; and, that, when she parked, she observed a snow pile abutting the space adjacent to the space in which she parked. Additionally, although Miracle testified that he chose the locations to move the snow into piles based on convenience, the Burckholters presented no evidence or expert testimony demonstrating that this method of snow removal caused Appellees to have superior knowledge of hazardous ice accumulations or that the conditions were substantially more dangerous than those prevailing generally. Further, we reject the Burckholters' argument that Miracle's experience as a snow-plower endowed him with superior knowledge of the fact that snow melts and refreezes due to changes in weather. Not only did Marie testify as to her knowledge of these facts, but everyone is presumed to possess such basic knowledge and appreciate the resulting risks. See Norton, supra;Brinkman, supra. Based upon the foregoing, *Page 12 
we find that the Burckholters have failed to demonstrate that Appellees possessed knowledge superior to that of Marie as to hazardous ice accumulations on the property.
 {¶ 22} Next, the Burckholters argue that Appellees negligently caused or permitted an unnatural accumulation of ice in the parking lot as a result of their negligent snow removal process. In support, the Burckholters cite to the fact that both Appellees participated in the snow removal process; that the evidence demonstrates icy run-off was created by the snow piles plowed by Miracle; and, that Miracle chose the locations to move the snow into piles. The Burckholters assert that snow, once removed from its natural location and plowed in such a way that the melting of the pile would run and refreeze, becomes an unnatural accumulation of ice. In support of their argument, the Burckholters cite two cases decided by the Eighth Appellate District,Stinson v. Cleveland Clinic Found. (1987), 37 Ohio App.3d 146, andBittinger v. Klotzman, 8th Dist. No. 61490, 1993 WL 76931.
 {¶ 23} In Stinson, the defendant landowner plowed the snow from a sidewalk onto a grassy area on a graded incline. Thereafter, some snow melted, causing run-off onto the sidewalk which subsequently froze. The plaintiff who slipped and fell on the ice provided evidentiary materials as to the regional daily snowfall and hourly fluctuations in temperature, as well as the grading of the land *Page 13 
and the resulting flow of water from the melting snow. The Eighth Appellate District determined that, under these facts, a genuine issue of material fact existed as to whether the condition was unnatural and reasonably foreseeable. However, the Eighth Appellate District subsequently distinguished a factually similar case fromStinson on the basis that no evidence was presented that the snow had been piled on a graded incline. See Flint, 2002-Ohio-2747, ¶ 21.
 {¶ 24} In Bittinger, a plaintiff who slipped and fell presented evidence that the defendant landowner plowed snow onto the "high end" of a sloped parking lot, which caused icy run-off towards the center of the lot. The Eighth Appellate District found that this situation was factually analogous to Stinson and found that a genuine issue of material fact existed as to whether the condition was an unnatural accumulation.
 {¶ 25} Here, we find that the facts advanced by the Burckholters are more analogous to the natural run-off situations presented in Davis,McDonald, Zamano, DeSalvo, Flint, Hoenigman, and Klein. The Burckholters presented no evidence that the snow piles created by Appellees were situated on a graded incline or that the parking lot was sloped as inStinson or Bittinger. Thus, even if we were persuaded by the reasoning of the Eighth Appellate District in Stinson and Bittinger, we would find the current situation to be distinguishable. Additionally, the Burckholters advanced no other theory demonstrating that the ice *Page 14 
accumulations were unnatural. Accordingly, even accepting the Burckholters' theory that run-off from the melting piles of plowed snow created the ice on which Marie fell, we are persuaded by the findings of numerous other appellate districts that, when snow is removed by plowing it into piles, a certain amount of run-off water is expected and natural. Thus, we find that there is no genuine issue of material fact as to whether there was an unnatural accumulation of ice.
 {¶ 26} Accordingly, we overrule the Burckholters' assignment of error.
 {¶ 27} Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
 PRESTON, P.J. and SHAW, J., concur. *Page 1